UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

CASE NO.: _____

UNITED STATES FIRE INSURANCE
COMPANY, a foreign corporation,

    Plaintiff,

v.

FINEMARK NATIONAL BANK
& TRUST, a Florida registered entity,

    Defendant.
_____/

## COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

Plaintiff, UNITED STATES FIRE INSURANCE COMPANY ("USFIC"), by and through its undersigned counsel, hereby files this *Complaint for Damages and Equitable Relief* against the Defendant, FINEMARK NATIONAL BANK & TRUST ("FINEMARK"), and alleges as follows:

### I. PARTIES, JURISDICTION AND VENUE

1. This is a claim for a declaration of the parties' rights and responsibilities under a series of contracts, at law, and in equity. Jurisdiction is founded upon 28 U.S.C. §1332, diversity of citizenship.

2. Plaintiff, USFIC, is a foreign corporation incorporated in the State of Delaware, with its principal place of business in the State of Delaware. USFIC is a citizen of the State of Delaware.

3. Defendant, FINEMARK, is a Florida registered entity with its principal place of business in Fort Myers, Florida. FINEMARK is a citizen of the State of Florida.

CASE NO.: _____

4. The amount in controversy is in excess of Seventy-Five Thousand and 00/100 Dollars ($75,000.00), exclusive of interest, costs and attorneys' fees.

5. Venue is appropriate in this Court because a significant portion of the transactions and occurrences giving rise to this action occurred in Lee County, Florida.

6. All conditions precedent to the filing of the instant action have occurred or have otherwise been waived.

## II. GENERAL ALLEGATIONS

A. **The Bonds, *Indemnity Agreement*, and Surety Claims and Losses**

7. USFIC is in the business of issuing contract surety bonds, including construction payment and performance bonds.

8. Gates Group LLC d/b/a Gates Construction ("Gates") requested USFIC to issue *Payment* and *Performance Bonds* (collectively, the "*Bonds*") for various construction project throughout the State of Florida, including the project commonly known as the "Broken Sound Clubhouse" located in Boca Raton, Florida (the "Broken Sound Project"). A true and correct copy of a *List of the Bonds and Bonded Projects*, as issued by USFIC on behalf of Gates, is attached hereto as **Exhibit "A"**.

9. As a condition precedent to USFIC issuing the *Bonds*, USFIC required Gates, GH Capital Holdings, LLC, FG Capital Holdings, LLC, FinMark Strategy Partners LLC, Todd E. Gates and John A. Hayes (collectively, the "Indemnitors") to execute a *General Collateral & Indemnity Agreement* dated July 24, 2019 (the "*Indemnity Agreement*"). A true and correct copy of the *Indemnity Agreement* is attached hereto as **Exhibit "B"**.

10. Pursuant to the *Indemnity Agreement*, and in accordance with common law, the Indemnitors agreed to exonerate, indemnify, and hold harmless USFIC from any losses and/or

CASE NO.: _____

expenses associated with USFIC's issuance of the *Bonds* and, specifically, assigned to USFIC their rights, title, and interests to any and all contract funds payable on any of the bonded projects as set forth under Paragraph 7 of the *Indemnity Agreement*.

11. Further, the Indemnitors specifically designated such contract funds as "trust funds" to benefit USFIC under the *Bonds* as set forth under Paragraph 8 of the *Indemnity Agreement*.

12. USFIC has received numerous claims under the various *Bonds*, which claims currently exceed Ten Million Dollars ($10,000,000.00). To date, in its capacity as a performing surety, USFIC has incurred losses in the total amount of Two Million One Hundred Forty-Six Thousand Eight Hundred Sixteen and 00/100 Dollars ($2,146,816.31) under the *Bonds*. A true and correct copy of the *Claim and Payment Breakdown* is attached hereto as **Exhibit "C"**.

13. As of February 3, 2022, in connection with the Broken Sound Project, USFIC has received numerous claims under the Broken Sound Payment Bond, which claims currently exceed $3.1 million. *See* **Exhibit "C"**, relating to Broken Sound Project.

14. As of this filing, USFIC has incurred losses in excess of $1.8 million in satisfying its bonded obligations under the Broken Sound Project.

15. USFIC anticipates receiving additional claims under the *Bonds*, including but not limited to on the Broken Sound Project.

   B. **Gates' Banking Relationship with FINEMARK**

16. At all times material hereto, FINEMARK served as the construction lender to Gates. During the course of the banking relationship, FINEMARK provided certain financing to Gates including, but not limited to, a line of credit in the amount of $2.5 million.

CASE NO.: _____

17. During the course of the banking relationship, FINEMARK learned that Gates performed construction work for municipalities, counties, and state agencies, as well as private owners, all of which required the issuance of payment and performance bonds, such as the *Bonds* issued by USFIC.

18. During the course of the banking relationship, FINEMARK was also provided access to Gates' financial information and was otherwise aware that Gates was in the business of performing bonded construction work. In particular, Gates' Financial Statements provided to FINEMARK contained a section entitled "SPECIFIC UNCERTANTIES" which explained Gates' continuing exposure under the surety bonds. For instance, the Notes to the Financial Statements as of December 31, 2020, states in pertinent part:

> NOTE 13 – SPECIFIC UNCERTAINTIES
>
> SURETY BOND
>
> The Company, as a condition for entering into construction contracts, had an outstanding surety bond as of December 31, 2020 and December 31, 2019. **_Bonded construction projects are collateralized by contract receivables_**. (Emphasis added).

C. **FINEMARK's Improper Sweeping of Bonded Contract Proceeds**

19. Prior to October 20, 2021, FINEMARK had actual knowledge that Gates was performing bonded construction work, and that the bonded contract projects were collateralized by the contract receivables.

20. On or about October 20, 2021, FINEMARK provided Gates with a "*Notice of Events of Default: Loan No. 300734-1*" under the following agreements entered into between Gates and FINEMARK: (a) *Renewal Promissory Note* dated June 21, 2021; (b) *Business Loan Agreement* dated June 21, 2021; and (c) *Commercial Security Agreement* dated June 21, 2021

CASE NO.: _____

("*Gates Loan Agreements*"). A true and correct copy of FINEMARK's correspondence dated October 20, 2021 is attached hereto as **Exhibit "D"**.

21. By its October 20, 2021 correspondence, FINEMARK had actual knowledge of claims and/or litigation asserted by various subcontractors, suppliers, materialmen, and/or vendors against Gates in connection with various construction projects:

> The Events of Default include but are not limited to:
>
> * * *
>
> Adverse Changes: material adverse changes in Borrower's financial condition *as reflected by the numerous lawsuits filed against Borrower as described on <u>Exhibit A</u> attached hereto (collectively the "Lawsuits")* and other actions of the Borrower; and which based on those Lawsuits and actions Lender believes that the prospects of Borrower's payment or performance of the Note is impaired; each of which is an Event of Defaultof the Note, Loan Agreement, and Security Agreement . . . (Emphasis added)

Attached as Exhibit A to its correspondence, FINEMARK identified nine (9) lawsuits involving Gates giving rise to the alleged default.

22. On or about October 21, 2021, Gates received a construction progress payment (Check No. 001252) from the Owner of the Broken Sound Project in the amount of Two Million Three Hundred Eleven Thousand Seven Hundred Ninety-Four and 77/100 Dollars ($2,311,794.77) ("Broken Sound Funds").

23. Gates subsequently deposited the Broken Sound Funds into its FINEMARK operating account titled "Gates Group Operating *6574".

24. Between October 21 and 25, 2021, FINEMARK unilaterally and improperly swept in excess of $1.5 million (the "Improperly Swept Funds") from the Broken Sound Funds.

CASE NO.: _____

25. At the time it retained the Improperly Swept Funds, FINEMARK had no right or entitlement to any of the Broken Sound Funds as all such funds were earmarked for the benefit of Gates' lower-tier vendors or other legitimate indebtedness on the Broken Sound Project.

**D.     Demands for the Return of the Improperly Swept Funds**

26. On November 1, 2021, Gates made demand upon FINEMARK for the immediate return of the Improperly Swept Funds. A true and correct copy of Gates' correspondence dated November 1, 2021 is attached hereto as **Exhibit "E"**.

27. By its correspondence, Gates established that FINEMARK had prior knowledge that the Broken Sound Funds were construction funds held for the benefit of subcontractors and materialmen and not subject to being "swept" by FINEMARK for other indebtedness:

> As you are aware, my client is in the business of new construction and renovation. As you are also aware, my client *routinely receives payments from its customers which my client, under Florida law, holds in trust for the purpose of paying subcontractors and materialmen*. As you should be aware, while banks may routinely exercise set-off against deposits made in the ordinary course of business, *Florida law specifically precludes set-off of funds where the bank has knowledge of sufficient facts to charge it with notice of an existing interest of a third-party in and to the deposited funds, such as construction funds*.
>
> Here, FineMark is undoubtedly charged with notice that the check from Broken Sound Club, drawn from its "New Renovation Construction" account, constitutes construction funds held by my client for the benefit of subcontractors and materialmen. *FineMark also has actual knowledge that Gates is in the business of new construction and renovation, that Gates receives construction funds which it deposits into its operating account, that Gates holds those funds in trust for the benefit of subcontractors and materialmen, and that Gates pays its subcontractors and materialmen from those construction funds*. This practice has occurred during the entirety of Gates' relationship with FineMark…. (Emphasis added)

28. FINEMARK's sweeping of Gates' Broken Sound Funds was intentional, with knowledge that they constituted bonded contract funds.  By its correspondence dated October 28,

CASE NO.: _____

2021, Gates confirms FINEMARK's knowledge and memorializes a conversation with FINEMARK establishing its intent to wrongfully take possession of the Improperly Swept Funds:

> Not only did FineMark have actual knowledge that the deposited funds were deposited for the purpose of paying subcontractors, ***you actually stated to Mr. Gates during your meeting on October 26, 2021 that FineMark had a premeditated plan to wait for another check from Broken Sound Club to be deposited before sweeping the account and declaring a default and it did just that*** by waiting for the funds from Broken Sound Club to clear before informing Mr. Gates of a purported default on October 25, 2021 at 5:00 pm. (Emphasis added)

29. Despite Gates' demand, FINEMARK failed and refused to immediately return the Improperly Swept Funds.

30. On December 21, 2021, USFIC made demand upon FINEMARK to immediately return the Improperly Swept Funds to ensure payment to subcontractors, suppliers and other valid claimants in connection with the Broken Sound Project:

> … This letter serves as formal notice that FineMark National Bank & Trust's (the "Bank") improperly sweeping of bonded contract funds constitutes conversion and is in violation of well-established Florida law. ***USFIC, as surety, makes demand upon the Bank to immediately return of the bonded contract proceeds to ensure that the subcontractors and suppliers who furnished labor, material and services are timely paid***. (Emphasis added)

A true and correct copy of USFIC's correspondence dated December 21, 2021 is attached hereto as **Exhibit "F"**.

31. By its December 21, 2021 correspondence, USFIC placed FINEMARK on notice that:

    a.    Gates was performing bonded construction work;

    b.    Gates receives construction funds which it deposits into its operating account;

    c.    Gates holds those funds in trust for the benefit of subcontractors and materialmen,

CASE NO.: _____

    d.    multiple claims were made under the *Bonds*, including the *Payment Bond* issued in connection with the Broken Sound Project; and

    e.    USFIC's equitable subrogation rights as a construction surety trump any rights that FINEMARK might have to the Improperly Swept Funds as a matter of Florida law, citing to the Florida Supreme Court decision of *Transamerica Ins. Co. v. Barnett Bank of Marion Cty., N.A.*, 540 So. 2d 113, 116 (Fla. 1989) (a surety's equitable subrogation rights are superior even to those of a creditor bank with a prior perfected security interest).

*See* **Exhibit "F"**.

32. As a result of FINEMARK's sweeping of the Improperly Swept Funds, Gates was unable to pay its lower-tier vendors on the Broken Sound Project, resulting in USFIC incurring direct and proximate damages.

## COUNT I
## DECLARATORY RELIEF
## (PRIORITY OF INTEREST IN BONDED CONTRACT FUNDS)

33. USFIC incorporates paragraphs 1 through 32 as if set forth fully herein.

34. This action seeks a declaration of the priority of interest between USFIC and FINEMARK in connection with any bonded contract proceeds, specifically including but not limited to the Broken Sound Funds and Improperly Swept Funds.

35. There is a real and actual controversy between the parties, and a present and immediate need for a declaration of the parties' rights at issue in this case at law and in equity.

36. Due to FINEMARK improperly sweeping the bonded contract funds, USFIC has received numerous *Payment Bond* claims on the Broken Sound Project. USFIC's losses, to date, on the Broken Sounds Project exceed the amount of the Improperly Swept Funds.

37. USFIC, as a performing surety, has a contractual right to receive funds from the project owners to satisfy its obligations under the *Bonds*, including but not limited to disburse

CASE NO.: _____

funds to Gates' lower-tier vendors and/or to satisfy other legitimate indebtedness on the bonded projects.

38. In satisfying its bonded obligations under the Broken Sound Project, USFIC is entitled to the Broken Sound Funds. As a matter of law, USFIC becomes equitably subrogated and steps into the shoes of the obligees (the Owners), principal (Gates), and lower-tier claimants to assert rights that are superior as a matter of law to any security interest of FINEMARK.

39. Such equitable subrogation rights, as a matter of law, relate back to the issuance of the *Bonds*, and thus pre-date any claims by FINEMARK to the Broken Sound Funds.

40. Further, FINEMARK had no right or entitlement to any of the Broken Sound Funds as there were outstanding obligations on the Broken Sound Project, including but not limited to claims by Gates' lower-tier vendors.

41. As a result of the actions of FINEMARK, USFIC has incurred direct and proximate damages.

WHEREFORE, USFIC respectfully prays that this Honorable Court enter a *Final Judgment* in favor of USFIC and against FINEMARK:

    a. Declaring USFIC has superior rights to FINEMARK as to all bonded project funds, including but not limited to the Broken Sounds Funds, until such time as USFIC has been discharged of all actual or potential liability under the *Bonds*;

    b. Awarding USFIC its general, special and consequential damages which have been and/or will be incurred as a result of FINEMARK's retention of the Improperly Swept Funds; and

    c. Granting USFIC such other and further relief as this Court deems necessary, just and proper.

CASE NO.: _____

## COUNT II
## CONVERSION

42. USFIC incorporates paragraphs 1 through 32 as if set forth fully herein.

43. This is an action for conversion.

44. FINEMARK – without consent of Gates, the Broken Sound Project owner and/or USFIC – has deprived USFIC of the Bonded Contract Funds without lawful justification.

45. FINEMARK had prior and actual knowledge that the Bonded Contract Funds were earmarked for the benefit of Gates' lower-tier vendors or other legitimate indebtedness on the Broken Sound Project.

46. USFIC, as a performing surety, is equitably subrogated to the rights of Gates to receive the Broken Sound Funds. As such, USFIC steps into the shoes of the obligee, principal, and lower-tier claimants to assert rights that are superior as a matter of law to any security interest of FINEMARK.

47. Despite multiple demands and knowledge of the priority rights of USFIC to the Bonded Contract Funds, FINEMARK has failed and/or refused to return the Improperly Swept Funds.

48. As a result of the actions of FINEMARK, USFIC has incurred direct and proximate damages.

WHEREFORE, USFIC respectfully prays that this Honorable Court enter a *Final Judgment* in favor of USFIC and against FINEMARK:

    a. Awarding USFIC its general, special and consequential damages which have been and/or will be incurred as a result of FINEMARK's conversion of the Improperly Swept Funds;

CASE NO.: _____

b.  Granting USFIC such other and further relief as this Court deems necessary, just and proper.

DATED this 28th day of February 2022.

**ETCHEVERRY HARRISON, LLP**
Attorneys for USFIC
150 South Pine Island Road, Suite 105
Ft. Lauderdale, FL 33324
Phone: (954) 370-1681
Fax: (954) 370-1682
Etcheverry@etchlaw.com
Geller@etchlaw.com
Service@etchlaw.com

By: */s/ Edward Etcheverry*
Edward Etcheverry, Fla. Bar No.: 856517
Jeffrey S. Geller, Fla. Bar No.: 63721